OPINION. Van Fossan, Judge: The gain of $10,970 and $6,334.44 realized by petitioners as partners on the sale in 1944 of $34,000 par value bonds of Georgia Carolina & Northern Railroad and $27,000 par value bonds of Carolina Central Railroad, respectively, was treated by them for income tax purposes as a long term capital gain. The respondent, in recomputing their tax liability, treated such gain as ordinary income. The only question to be determined is whether the securities sold by petitioners during the taxable years were capital assets, as defined in section 117 (a) (1) of the Internal Revenue Code.[1] There is no dispute about the amount of gain realized or the term of holding. It is the position of the respondent that “the desire on the part of a dealer to switch from inventory to investment, even though certain formalities are observed for the purpose of identifying specific securities and segregating them, where the disposition and sales of the said securities are transacted in the same manner as in the case of its other dealer securities, cannot convert an inventory item into an investment item.” It is established that a taxpayer may be a dealer as to some securities and he may also hold similar or other securities on his own account for purposes other than for resale to customers. As to the latter, he is not a dealer, he is not entitled to compute income on the inventory method, and securities so purchased are properly recognizable as capital assets within the meaning of section 117 (a) (1). Schafer v. Helvering, 299 U. S. 171; Vaughan v. Commissioner (CCA-2), 85 Fed. (2d) 497; certiorari denied, 299 U. S. 606; Hammitt v. Commissioner (CCA-3), 79 Fed. (2d) 494; Francis Shelton Farr, 44 B. T. A. 683; R. O. Holton & Co., 44 B. T. A. 202; and I. T. 3891, C. B. 1948-1, p. 69, which reads as follows: Where securities are acquired and held by a dealer in securities solely for investment purposes, such securities will be recognized as capital assets, as defined in section 117 (a) (1) of t^he Internal Revenue Code, even though such securities are of the same type or of a similar nature as those ordinarily sold to the dealer’s customers. The respondent concedes that a merchant who inventories his wares can acquire a commodity or property for investment, but he argues lie can not take merchandise which he has consistently treated as part of his dealer category for tax purposes and by an arrangement, however meticulous, treat it as an investment, perhaps temporarily, while at the same time merchandising it just as he does the same stock in his business, and that a mere desire or intention to switch from inventory to investment is not sufficient to meet the definition of capital assets contained in the statute, citing Vance Lauderdale, 9 T. C. 751. Such argument is not based on the facts as disclosed by the evidence. Both petitioners testified that the securities involved were purchased for the firm’s own account and risk and held solely in expectation of a rise in the market. The first $35,000 par value certificates of deposit purchased in October 1942 were entered in the regular trading ledger, but at the end of the month were taken out of that ledger by an entry transferring them to a special account. Later purchases for the same purpose were treated in the same way. The securities involved were identified by number, fastened together, and earmarked to be held intact. That the securities were not placed in another receptacle is not important. They were clearly separated and distinguishable from the so-called free securities, which, although also held as collateral, apparently were a part of the securities traded in from day to day. It is true that $10,000 par value of the certificates of deposit frozen in October 1942 were released in the month following. However, this was done to correct an oversold position discovered at the end of October resulting from a mathematical error made in that month in the trading ledger. It is also true that numerous sales were made, but these sales were made from other free securities on hand or purchased during 1942,1943, and 1944. Only two sales were made of the Georgia Carolina & Northern bonds frozen by the bank: One a sale of $5,000 par value in 1943, and the other the sale herein involved of $34,000 par value in 1944. Both were treated as long term capital sales. Under certain circumstances brokers may be “Customers.” Estate of Harry E. R. Hall, 29 B. T. A. 1255; affirmed in Commissioner v. Stevens (CCA-2), 78 Fed. (2d) 713, in which case, according to the uncontradicted evidence, the partnership purchased securities not for the purpose of speculation or investment, but solely to resell to customers at a profit. However, “a taxpayer who trades for his own account does not sell to ‘customers.’ ” O. L. Burnett, 40 B. T. A. 605; affirmed on this point (CCA-5), 118 Fed. (2d) 659, wherein it was held that taxpayer, “being a trader in securities and commodities for her own account, as distinguished from a ‘dealer’ in securities and commodities, was not entitled to use inventories in determining her net income.” It was further held that such stock and commodities purchased and sold by her through brokers for her own account did not constitute property held by her primarily for sale to customers in the ordinary course of her trade or business. The application by the Commissioner of the $2,000 limitation on capital losses provided by section 117 (d) of the Revenue Act of 1934 in determining her tax liability was approved. The case of Vance Lauderdale, supra, cited by respondent, is distinguishable and therefore not applicable here. In that case the two taxpayers formed a partnership in 1939 to engage in the general business of specialists on the New York Stock Exchange. In June 1942 an employee was taken into the partnership solely for the purpose of acting as alternate on the Stock Exchange while one of the original partners was in military service. As of June 30, 1942, securities which the 1939 partnership had held as its stock in trade and inventories were held by the stock exchange house through which the old and new partnership cleared their transactions in an account labeled “old accounts,” which referred to the old partnership. All but 3,100 of the 20,140 shares held in the “old accounts,” together with later purchases of 1,800 shares, were sold prior to December 31,1943. The 1939 partnership filed a partnership return for 1942, which stated the business of the partnership to be “dealers in securities,” reflected the income of the old and new partnerships for that year, and showed an inventory at the end of the year of $129,695.26. For 1943 two partnership returns were filed, both showing the formation of the partnership as of 1939. It was held that profit from securities sold from “old accounts” was ordinary income and not capital gain, there being no evidence that the old partnership had been dissolved and its securities distributed to the partners. The evidence showed no change in the operation of the business or in the method of handling the securities. Thus, the formation of the so-called new partnership and the clearing of the securities through the “old accounts” effected no change in the securities involved from stock in trade to capital or investments. It is our conclusion, upon a careful consideration of all the evidence, that the securities involved were not property of a kind properly includible in inventory if on hand at the close of the taxable year and were not held by Van Tuyl & Abbe primarily for sale to customers in the ordinary course of its business. They were purchased for the partnership’s own account for the purpose of speculation and were capital assets. With respect to the profit derived from the sale of $27,000 par value Carolina Central Railroad Co. 4’s of 1949, our conclusion is the same. Reviewed by the Court. Decisions will be entered under Rule 50. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. — As used in this chapter.— (1) Capital assets. — The term “capital assets'" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or -business * * *